JEFFERSON STANDARD BROADCAST-ING COMPANY, a corporation, Plaintiff,

v.

FEDERAL COMMUNICATIONS COM-MISSION; Rosel H. Hyde, Chairman; Robert T. Bartley, Robert E. Lee, Kenneth A. Cox, James J. Wadsworth, Nicholas Johnson and H. Rex Lee, Individually and as Members of the Federal Communications Commission, Defendants.

No. 2413.

United States District Court
W. D. North Carolina,
Charlotte Division.

March 6, 1969.

 

Thomas Ashe Lockhart, Cansler & Lockhart, Charlotte, N. C., Welch O. Jordan, Jordan, Wright, Nichols, Caffrey & Hill, William L. Stocks, Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., for plaintiff.

Joseph R. Cruciani, Asst. U. S. Atty., Charlotte, N. C., Bernard C. O'Neill, Jr., Washington, D. C., for defendants.

## STATEMENT OF FACTS

McMILLAN, District Judge.

This case was heard in Charlotte on February 19, 1969 upon the motion of the defendants filed January 31, 1969 to dismiss the complaint upon the ground that this court has no jurisdiction because 47 U.S.C., § 402(b), vests exclusive jurisdiction over this cause in the United States Court of Appeals for the District of Columbia. The court is unable to agree with defendants' contentions; the motion to dismiss is denied; and the defendants will be expected to file answer or otherwise plead within the time provided by the rules.

The material before the court for purpose of this decision is the pertinent statutes, the complaint, and the various exhibits attached to or incorporated in the complaint.

The plaintiff from 1954 to 1968 owned and operated television broadcasting station WBTV in Charlotte and television broadcasting station WBTW in Florence, South Carolina. The stations broadcast on different television channels. The Grade "B" or weak signals of both stations overlap an area of roughly 1,200 square miles, in which area live about 50,000 people. Until 1964, the plaintiff might have expanded or improved the area coverage of either station, even if it meant extending the overlap of the signals. In 1964, however, the Federal Communications Commission adopted a regulation prohibiting the improvement of television broadcasting facilities which would result in an increase in Grade "B" overlap of the signal area of television stations under common ownership. (The existing overlap of the sig-

nals of the Florence and Charlotte stations was permitted to continue under a "grandfather" clause.)

Because the 1964 Commission order effectively prevented improvement of the facilities of either station as long as they remained under common control, it became apparent that WBTV and WBTW would have to separate or suffer substantial economic handicap. Part of the business picture was that other broadcasters throughout the coastal Carolinas were raising their towers and increasing their signal area with FCC approval and that the Florence area already had existing signal overlaps from at least fifteen other TV broadcasting stations, several of which were currently being authorized by the FCC to build taller towers and expand their signals further into the Florence signal area. After considering alternatives the plaintiff under pressure of the Commission's "No improvement" directive of 1964 elected to sell the Florence station. It was sold with the permission and consent of the FCC and on February 28, 1968, an order approving the sale was entered by the Commission.

At the time of the application for approval of the sale, petitioner informed the Commission that it intended to request a tax certificate pursuant to the Internal Revenue Code, 26 U.S.C.A., § 1071, so that the tax advantages of § 1071 could be obtained if the proceeds of the sale were reinvested in other broadcasting facilities.

After the plaintiff had completed the sale and assigned the rights to the purchaser on April 1, 1968, the plaintiff then applied for a tax certificate from the Commission under 26 U.S.C.A., § 1071(a), which reads:

"§ 1071. Gain from sale or exchange to effectuate policies of F.C.C.

"(a) Nonrecognition of gain or loss. —If the sale or exchange of property (including stock in a corporation) *is certified by the Federal Communications Commission* to be necessary *or appropriate to effectuate a change in a policy of, or the adoption of a new policy by, the Commission* with respect to the ownership and control of radio broadcasting stations, such sale or exchange shall, if the taxpayer so elects, *be treated as an involuntary conversion* of such property within the meaning of section 1033. For purposes of such section as made applicable by the provisions of this section, stock of a corporation operating a radio broadcasting station, whether or not representing control of such corporation, shall be treated as property similar or related in service or use to the property so converted. The part of the gain, if any, on such sale or exchange to which section 1033 is not applied shall nevertheless not be recognized, if the taxpayer so elects, to the extent that it is applied to reduce the basis for determining gain or loss on sale or exchange of property, of a character subject to the allowance for depreciation under section 167, remaining in the hands of the taxpayer immediately after the sale or exchange, or acquired in the same taxable year. The manner and amount of such reduction shall be determined under regulations prescribed by the Secretary or his delegate. Any election made by the taxpayer under this section shall be made by a statement to that effect in his return for the taxable year in which the sale or exchange takes place, and such election shall be binding for the taxable year and all subsequent taxable years." (Emphasis added.)

The Commission by three to two vote with one absentee and one vacancy denied petitioner's request for a tax certificate.

Meanwhile, plaintiff had contracted to buy Richmond television station WRVA-TV for about $5,000,000.00, investing therein slightly more than the proceeds from the sale of the Florence station.

The plaintiff filed this suit requesting a judgment setting aside the order of the Commission and in effect requiring the Commission to issue the requested certificate that the sale of the Florence tele-

vision station was "necessary *or appropriate* to effectuate a change in a policy of or the adoption of a new policy by the Commission with respect to the ownership and control of radio broadcasting stations * * *."

The defendants, without filing answer, moved to dismiss the suit upon grounds that exclusive jurisdiction over the suit is vested by 47 U.S.C. § 402, in the United States Court of Appeals for the District of Columbia.

## CONTENTIONS OF PARTIES

The government contends that 47 U.S. C.A., § 402, controls. That section, entitled "Judicial review of Commission's orders and decisions—Procedure," reads as follows:

"(a) Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 19A of Title 5.

"Right to appeal

"(b) Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

(1) By any applicant for a construction permit or station license, whose application is denied by the Commission.

(2) By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.

(3) By any party to an application for authority to transfer, assign, or *dispose* of any such instrument of authorization, or *any rights thereunder,* whose application is denied by the Commission.

(4) By any applicant for the permit required by section 325 of this title whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.

(5) By the holder of any construction permit or station license which has been modified or revoked by the Commission.

(6) By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any *application* described in paragraphs (1)—(4) of this subsection.

(7) By any person upon whom an order to cease and desist has been served under section 312 of this title.

(8) By any radio operator whose license has been suspended by the Commission."

The defendants contend that at bottom the Commission's authority to issue tax certificates under § 1071 of the Internal Revenue Code is simply a function of its power and authority to regulate and license broadcasting facilities under 47 U.S.C., § 309 and § 310; that the tax certificate function is "ancillary" to the radio licensing function and that although § 402(b) uses the term "may" and is therefore permissive in terms, it is mandatory in fact, and that the Court of Appeals for the District of Columbia is the only possible forum for filing this suit. The issuance of certificates under § 1071 of the Internal Revenue Code, the defendants contend, is purely a function of the FCC's licensing duties; the power to deny the certificate flows directly from the licensing power; and the Commission has consistently taken the view that § 1071 is purely for the relief of those who had been expressly ordered to get rid of overlapping holdings and that tax relief is not available where the divestiture of ownership or control is "voluntary."

The plaintiff contends that the jurisdictional issue is not controlled by 47 U.S.C.A., § 402, but instead is controlled by Title 5, §§ 702, 703 and 706 dealing

with judicial review of decisions of administrative agencies which expressly authorize court action and decision including compelling agency actions unlawfully withheld and setting aside agency actions found to be arbitrary, capricious, abuse of discretion or otherwise not in accordance with law. Sections 702, 703 and 706 of Title 5 read as follows:

"§ 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

"§ 703. Form and venue of proceeding

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."

"§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

## OPINION OF THE COURT

■ The court is of the opinion that the Court of Appeals of the District of Columbia is not the exclusive forum for the filing of this suit, and the motion of the defendants to dismiss is denied.

On the present record, this court is of the following opinions:

1. This is not an "appeal" within the meaning of § 402(b), but is a suit to obtain an order of court requiring affirmative action.

■ 2. The order of the Commission denying the tax certificate is not an order of the Commission "under *this* chapter" within the contemplation of § 402(a), but is an order under another chapter, specifically the Internal Revenue Code, 26 U.S.C.A., § 1071.

3. The two subsections of § 402(b) on which the defendants rely do not apply. Subsection (3) does not apply because there has been no denial of any application for transfer of rights. Subsection (6) does not apply because the applicant is not an "other person" as

specified in § 402(b) (6), but is in fact the applicant.

4. As to the contention that issuing the tax certificate is "ancillary" to the Commission's power to issue licenses:

(a) It appears that all the cases cited by the defendants in support of this "ancillary" jurisdiction dealt in fact with the grant or denial of licenses either to the applicant or to some other interested party, and no cited case dealt with the tax certificate authorized by the Internal Revenue Code.

(b) It appears further to this court that the duty of the Commission and the expertise of the Commission relate to broadcasting rights rather than tax law and that the tax certificate is not based upon any expertise of the Commission nor upon the furtherance of any policies of the Commission and does not require nor contemplate any exercise of *discretion* by the Commission. It involves rather a routine certification by the Commission of a simple objective fact—whether the sale of the Florence station by the plaintiff was "necessary *or appropriate* to effectuate a change in a policy of, or the adoption of a new policy by, the Commission with respect to the ownership and control of radio broadcasting stations * * *." A simple recognition by way of certification that the divestiture of control was dictated by economic consequences of the Commission's "No improvement" directive or is *appropriate* to carrying out that directive does not involve any exercise of Commission discretion or licensing powers. It is simply the reporting of an objective fact.

(c) Finally, it is the view of this court that if § 1071 was intended to apply only to sales *ordered* by the Commission *without request of the applicant,* then § 1071 is rendered entirely unnecessary. Section 1071 says that sales so certified by the Commission shall, "if the taxpayer so elects,

*be treated as* an involuntary conversion of such property within the meaning of section 1033." Since § 1033 of the Internal Revenue Code *already* provides the tax benefit for transactions which *are* involuntary conversions, it is perfectly obvious that Congress intended by § 1071 to extend the involuntary conversion treatment to cases where the conversion was from economic compulsion of a Commission's order and that the only way to give any meaning at all to § 1071 is to refuse to limit it to involuntary conversions expressly ordered by the Commission.

5. With regard to the question whether the conversion was voluntary or involuntary in this case, the only evidence presently before the court is that the sale was made mandatory as an economic matter by the Commission's 1964 change of policy in the form of the directive which prohibited the plaintiff from improving or expanding service at Florence as long as Florence and Charlotte were under common control. This 1964 change of policy made the sale necessary for survival of the Florence station. These facts, if true as alleged, make the issuance of the tax certificate a purely ministerial act—far removed from a "licensing" determination or anything truly "ancillary" to licensing.

## CONCLUSION

To some extent this discussion has had to deal with questions which, of course, will also be relevant in a trial on the merits. These questions were all debated by counsel in the three-hour hearing of the motion and were considered pertinent by all parties at the hearing because they arise out of the jurisdictional contention of the government that the issuance of the tax certificate is "ancillary" to the Commission's licensing powers. This opinion is of course based only on the facts shown by the present record. It may be that in the final trial on the merits, facts quite different may appear. The statements and implications of this opinion must be read in

light of the issues presented by the jurisdictional motion and, of course, should not be taken as any effort to predict how the controversy should ultimately be resolved.

The motion to dismiss is denied.